IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-00342-LTB-KLM

ASHA SALIM,

        Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO,

        Defendant.

_____

ORDER
_____

        This matter is before me on a Motion for Summary Judgment filed by Defendant, Catholic Health Initiatives Colorado ("Centura Health") seeking dismissal of the employment discrimination claim filed against it by its former employee, Plaintiff Asha Salim. [**Doc # 18**] In addition, I address the related Motion to Strike Attestation of LaTasha Thomas, filed by Centura Health, asking that I strike the attestation filed as Exhibit 7 to Plaintiff's Response to Motion for Summary Judgment on the basis that it does not comply with the requirements of an affidavit or of an unsworn declaration. [**Doc # 27**] Oral arguments would not materially assist me in these determinations. After consideration of the parties' arguments, and for the reason stated, I GRANT the motions, I ENTER summary judgment in favor of Centura Health, and I DISMISS this case.

**I. Facts**

        Plaintiff was born and raised in Ethiopia or Somalia. She was hired to work as a Nurse's Aide/Care Partner at The Gardens at St. Elizabeth – a senior residence center owned by Centura

1

Health – in October of 2007. It is undisputed that Defendant Catholic Health Initiatives Colorado and Centura Health are one and the same as Plaintiff's employer. From October 2007, through her termination in August 2009, Plaintiff performed her duties without any disciplinary actions or reprimands. Her supervisor at the time of her termination was the Director of Assisted Living at The Gardens, Julia Spigarelli.

On Wednesday, August 12, 2009, Plaintiff asked Kathy Bailey – Ms. Spigarelli's Administrative Assistant and the employee in charge of scheduling – if someone was available to cover her shift the following day, Thursday, August 13, 2009. Ms. Bailey informed Plaintiff that she was responsible for finding someone to cover her shift, and when Plaintiff indicated that she might "call in sick," she was informed that she could only call in if she was, in fact, ill. Also on that day, Plaintiff's 20-year-old daughter became "very sick," and Plaintiff asked to leave work. After finishing her tasks, Plaintiff was allowed to leave work an hour early.

The next morning on Thursday, August 13, 2009, Plaintiff called the front desk nurse prior to her shift and indicated that she was not coming in to work that day at 2:00 p.m. because she needed take care of her daughter who was ill. Ms. Bailey called Plaintiff back later that morning and requested that she provide a doctor's note in order to take the leave. Plaintiff faxed in a note from her daughter's doctor that indicated that she "can be excused from work 8/13/09 - 8/14/09." [Doc #18, Ex. A-5] After receiving the faxed doctor's note, Ms. Bailey called Plaintiff and let her know that it was not acceptable.

In her affidavit, Plaintiff avers that she then called into The Gardens at about 2:00 p.m. – the time her shift was scheduled to start – and spoke with Beth Breen, the Executive Director of The Gardens, who told her "not to worry" and that she "should stay home and take care of [her]

daughter." [Doc #21, Ex. 1]  This is disputed by Ms. Breen's affidavit in which she indicates that she did not speak with Plaintiff on that day. [Doc #21, Ex. F]  There is also disputed evidence as to whether Plaintiff had told co-workers that she had planned to be out of town – either in Phoenix with a friend or taking her daughter to her first year of college – during her shift on August 13, 2009.

On her next scheduled workday, Monday, August 17, 2009, Plaintiff reported to work with a second note from her daughter's doctor that explained more fully that her daughter was sick and needed care from her mother. [Doc #18, Ex. A-6]  At that time Ms. Spigarelli suspended Plaintiff, and told her to go home while they decided what to do about her employment.  On August 24, 2009, Ms. Spigarelli, Ms. Breen, and the HR Representative at The Gardens decided to terminate Plaintiff's employment with Centura Health.

Plaintiff subsequently filed this lawsuit in which she alleges that Centura Health violated 42 U.S.C. §2000e-2(a)(1) ("Title VII") because the motivation behind her termination was race or national origin discrimination.  In response, Centura Health has filed this motion seeking summary judgment in its favor on Plaintiff's Title VII claim under Fed. R. Civ. P. 56.

## I.  Motion to Strike

As an initial matter, I address Centura Health's motion in which it seeks to strike the "Attestation of LaTasha Thomas"– filed by Plaintiff in support of her response to the summary judgment motion – on the basis that it is not competent, admissible evidence because it does not comply with the requirements of Fed. R. Civ. P. 56(c) or of 28 U.S.C. §1746 as an affidavit or unsworn declaration.  Specifically, it is not notarized, and it does not state that LaTasha Thomas signed it "under penalty of perjury" or that it is "true and correct."

In her response, Plaintiff does not dispute or contest the merits of the motion to strike; rather, she indicates only that she has been unable to contact Ms. Thomas in order to have her sign a new/compliant document, and that "the truth of the attestation is not determinative of the summary judgment motion" because the relevant fact at issue – whether Plaintiff had planned to be out of town when she was scheduled to work on August 13, 2009 – is nonetheless disputed by Plaintiff's own deposition testimony. As a result, I grant the motion to strike and do not consider the substance of the "Attestation of LaTasha Thomas" attached as Exhibit 7 to Plaintiff's response. [Doc #21, Ex. 7]

### III. Standard of Review

When deciding a motion under Fed. R. Civ. P. 56, summary judgment shall be granted for the movant if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Id.* 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for the plaintiff. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 252; *Mares v. ConAgra Poultry*

*Co.*, 971 F.2d 492, 494 (10th Cir. 1992).

### IV. Analysis

In its motion for summary judgment, Centura Health argues that it is entitled to judgment in its favor on Plaintiff's Title VII claim. Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Where the plaintiff has presented no direct evidence of discriminatory motive or intent, analysis is governed by the burden-shifting format set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). At step one, the plaintiff is required to prove a *prima facie* case of discrimination; to establish a *prima facie* case of termination, a plaintiff must demonstrate that: (1) he or she was a member of a protected class; (2) he or she was qualified and satisfactorily performing her job; and (3) he or she was terminated under circumstances giving rise to an inference of discrimination. *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).

Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to rebut the presumption of discrimination at step two. The defendant may rebut the presumption by articulating some legitimate, nondiscriminatory reason for the employment decision. To satisfy this burden, the "employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999)(*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct.

1089, 1093, 67 L.Ed.2d 207 (1981)).

If the defendant succeeds in articulating a facially non-discriminatory reason for the termination, the inquiry returns to whether or not the plaintiff has met his or her burden of persuasion. Thus, at step three, the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination. *See Sorensen v. City of Aurora*, 984 F.2d 349, 352 (10th Cir. 1993); *EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992). At this point, the presumption of discrimination created by the plaintiff's *prima facie* case "simply drops out of the picture" and "[t]he plaintiff then carries the full burden of persuasion to show that the defendant discriminated on the illegal basis" of, as relevant here, race or national origin. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1125 (10th Cir. 2005).

For the purpose of this motion, Centura Health does not dispute that Plaintiff can make out her *prima facie* case. Instead, it argues that Plaintiff cannot rebut its facially non-discriminatory reasons for her termination. Centura Health maintains that Plaintiff was terminated because she violated the attendance policy at The Gardens on August 13, 2009; specifically, it argues that her absence was equivalent to a "no call/no show" because she missed work, had not secured coverage for her shift, and failed to inform or contact her supervisor (Ms. Spigarelli) before her absence. In addition, her termination was based on her supervisors' reasonable belief, under the circumstances, that Plaintiff was being dishonest about the reason that she was absent from work. Finally, Centura Health maintains that Plaintiff cannot show pretext because she unambiguously testified in her deposition that her supervisors did not discriminate against her based on her race or national origin.

Since a plaintiff utilizing the *McDonnell Douglas* evidentiary framework normally cannot provide direct evidence of discrimination, as is the case here, a pretext argument provides a method of satisfying this burden by allowing the factfinder "to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). A plaintiff shows pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence" and hence infer that the employer did not act for the asserted nondiscriminatory reasons. *Plotke v . White*, 405 F.3d 1092, 1102 (10th Cir. 2005)(*quoting Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997)).

There are several methods by which a plaintiff may demonstrate pretext. *Swackhammer v. Sprint/United Management Co.,* 493 F.3d 1160, 1167-1169 (10th Cir. 2007). A typical method is by providing direct "evidence that the defendant's stated reason for the adverse employment action was false." *Id* at 1167 (*citing Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000)). Another common method is a differential treatment argument, in which the plaintiff demonstrates that the employer "treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness" in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff. *Id.* at 1167-8.

In support of her assertion that the reasons provided by Centura Health for her termination were pretextual or not worthy of belief, Plaintiff first refers to the evidence that she had contacted The Gardens prior to her shift and spoke with several people there, including the

"front-desk" nurse, Ms. Bailey and Ms. Breen.  In addition, she had faxed in a note from her daughter's doctor and, when it was deemed unacceptable, she brought in another note when she returned to work at her next shift.  Plaintiff notes that it was the only time she had called in before her shift, and that there is no evidence that anyone had been terminated for a one-time failure to speak to their direct supervisor when calling in sick.  In addition, although Centura Health now maintains that she was also terminated because her supervisors reasonably believed she was being dishonest about the reasons for her absence, Plaintiff refers to deposition testimony from Ms. Spigarelli indicating although they suspected she was being untruthful, that was not the reason for her termination.  Specifically, Ms. Spigarelli testified that Plaintiff's termination was based only on her no-call/no-show, even though there was some suspicion that she was being dishonest or misrepresenting the truth about her absence.

In addition, Plaintiff provided an affidavit from a former employee at The Gardens – Lenora González – who indicated that when an employee called in sick, they would only have to speak to the person answering the phone and "[w]e were not required to talk to Julia [Spigarelli] about being sick."  And, that "employees commonly called in at the last minute and nothing happened to them." [Doc #21, Ex. 2]   In addition, Plaintiff argues that another African employee at The Gardens was treated similarly by Ms. Spigarelli.  Specifically, she argues that Stanley Peters, a native of Nigeria, was terminated by Ms. Spigarelli because, in part, she did not believe his story after he was wrongly accused of giving a resident incorrect medications.  Mr. Peters also stated in his affidavit that he believed another employee "from Africa" was "demoted simply because she was from Africa."  [Doc #21, Ex. 9]

I conclude, however, that Plaintiff's evidence, even when viewed in her favor, is insufficient for a fact-finder to infer discrimination from evidence that Centura Health's explanation and reasons for her termination are unworthy of belief. "[T]he falsity of an employer's proffered explanation . . . defeats summary judgment only if it could reasonably lead the trier of fact to infer a discriminatory motive; where the evidence of pretext supports only nondiscriminatory motives, such an inference is logically precluded and summary judgment for the employer is appropriate." *Swackhammer v. Sprint/United Management, supra,* 493 F.3d at 1168 (*citing Miller v. Eby Realty Group LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005)). Rather, Plaintiff has "created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Swackhammer v. Sprint/United Management, supra,* 493 F.3d at 1168 (*quoting Reeves v. Sanderson Plumbing, supra*, 530 U.S. at 148).

Specifically, Plaintiff clearly testified during her deposition that her supervisors were not biased against people because of their race or national origin. Her testimony was as follows:

> Q: Do you believe that any of your supervisors were biased against black people? They didn't like black people?
> A: No, no, they don't bias against black people.
>
> Q: I beg your pardon?
> A: No.
>
> Q: You thought they were okay with black people?
> A: Yeah.
>
> Q: Okay. And do you think that they were okay with Africans too?
> A: Yes
>
> . . .

>    Q: Okay. And did you think that they were okay with Somalians?
>    A: Yes.
>
>    Q: Or Somalis?
>    A: Yes.
>
>    . . .
>
>    Q: Okay. So you don't think they had any bias against –
>    A: No.
>    Q: – black people?
>    A: No.
>
>    Q: Or Somalis or Muslims or Africans/
>    A: No
>
>    . . .
>
>    Q: Did you ever see them try to hurt or discriminate against or cause problems for someone because they were black or Muslim or African?
>    A: No.

[Doc #18, Ex. A, pp. 101-02]

In an attempt to explain this testimony, Plaintiff now argues in her response to this motion that her theory of the case is that she was not discriminated against "as long as she maintained her place," but "when she found herself outside her subservient role, she felt discrimination." [Doc #21, pg. 1] Specifically, in her briefing Plaintiff maintains that Ms. Spigarelli would not discriminate against African employees unless "she was forced to actually listen to that African employee," and she then refused to believe them "even though the weight of the evidence was on their side." [Doc #21, pp. 9-10] However, Plaintiff does not aver that she felt discriminated against in her affidavit, nor is this argument supported by any evidence. Rather, the evidence when viewed in her favor is that Plaintiff may have been treated unfairly – in that she was terminated the first time she called in because her supervisors' did not believe her stated reason for not coming into work on August 13, 2009 – but the evidence does support any

reasonable inference of a discriminatory motive.  Therefore, I conclude that Plaintiff has failed to satisfy her burden at step three of the *McDonnell Douglas* evidentiary framework to raise an inference that Centura Health's termination was a pretext to mask discrimination.

ACCORDINGLY, I GRANT the Motion to Strike Attestation of LaTasha Thomas [**Doc # 27**]; I GRANT the Motion for Summary Judgment [**Doc # 18**]; and, as such, I ENTER SUMMARY JUDGMENT against Plaintiff, Asha Salim, and in favor of Defendant, Catholic Health Initiatives Colorado with costs awarded Defendant.  As a result, I DISMISS this case.

Dated: October   2  , 2012, in Denver, Colorado.

                BY THE COURT:

                  s/Lewis T. Babcock
                LEWIS T. BABCOCK, JUDGE